IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

PHILLIP and SUSAN SVEUM,

(Chapter 7)

Debtors.

Case No. 12-15486

STOUGHTON LUMBER CO. INC.,

Plaintiff,

v.

Adv. No. 13-00003

PHILLIP and SUSAN SVEUM.

Defendants.

## MEMORANDUM ON REMAND

Phillip Sveum and his brother, Peter, were president and vice president, respectively, and equal owners of a Wisconsin construction company named Kegonsa Builders, Inc. ("KBI"). *Phillip Sveum v. Stoughton Lumber Company*, 2014 WL 4748538, *1 (W.D. Wis. Sept. 23, 2014). KBI and Stoughton Lumber Company, Inc. ("Stoughton") had a longtime business relationship; Stoughton supplied KBI with materials for home construction. *Id.*

As a result of KBI's failure to pay its obligations to subcontractors and suppliers, Stoughton filed a theft by contractor suit, *inter alia*, in Dane County Circuit Court on January 13, 2011. *Id.* Parties settled on June 2, 2011. *Id.* at *2. Under the terms of the settlement agreement, KBI, Phillip, and Peter agreed to pay $100,000 in cash immediately and signed a $550,000 promissory note, secured by Sveum Investment Company, LLP real estate. *Id.* Phillip and Peter

1

also executed personal guarantees. *Id.* When the first lien holder on the real estate securing the promissory note initiated foreclosure proceedings, Stoughton, according to the terms of the settlement, accelerated the note. *Id.* Because, KBI failed to pay the promissory note, Stoughton filed a second lawsuit against them in Dane County Circuit Court. *Id.* Before the summary judgment hearing took place, Peter and Phillip, with their spouses, filed chapter 7 bankruptcy petitions. *Id.* The second lawsuit was stayed as to Peter and Phillip, but Stoughton obtained a default judgment against KBI for $589,638.10. *Id.*

Stoughton then commenced these adversary proceedings, contending the debt from the first lawsuit was non-dischargeable as a debt arising from fraud or defalcation under 11 U.S.C. § 523(a)(4). *Id.* After denial of summary judgment, the cases were consolidated for trial. *Id.* The trial was held on August 1, 2013. *Id.*

Phillip testified to having authority over KBI's accounts, receiving monthly financial statements, and having knowledge of its draw requests to obtain funds from bank lenders to build homes. *Id.* He also testified to participating in the decision not to pay Stoughton out of a cash infusion from their other businesses. *Id.* at note 5. However, Phillip claimed he did not participate in or have knowledge of Peter's failure to segregate the draw request funds or his decision not to pay Stoughton from the sale proceeds, even though he presumably saw the closing statements and certainly received a commission every time his franchise of Coldwell Banker Success sold a home for KBI. *Id.* at *2-3; Appellant's App. (dkt. 2-1) ECF 173. Furthermore, he claimed to have no knowledge of Peter's false affidavits certifying full payment despite the fact the affidavits were submitted to Community Title, another business Phillip had an interest in with his brother. *Id.* at *2-3; *Id.* at ECF 64, 104. Phillip, as vice president and treasurer of KBI and co-owner of other businesses with his brother, was invested in KBI's

financial success, had the authority to make decisions in furtherance of KBI's financial success,

but claimed he had no involvement in KBI's financial decisions, even though those decisions

impacted his receipt of commissions and the success of his other businesses.

At the trial's conclusion, I ruled from the bench, finding: (1) a trust existed by operation

of state law for each of KBI's 34 residential projects; (2) Phillip and Peter, as officers of KBI,

were fiduciaries of that trust; and (3) Phillip and Peter violated their trust obligations to

Stoughton Lumber and committed defalcations. In particular, I found (1) both Phillip and Peter

knew KBI held funds received in payment for the projects for the benefit of its subcontractors

and material suppliers, as that point was fundamental to construction law; and (2) Phillip and

Peter's testimony that they did not know of their trust obligations was "disingenuous." *Sveum,*

2014 WL 4748538 at *3. I stated that:

> [B]oth defendants testified to intentionally directing payments
> from draws to pay other than the subs and material suppliers who
> contributed to the improvement of the property securing the loan
> on which the draw was made. So both of them knowingly violated
> the trust. That is within the range of defalcation.

*Id.* (citing Appellant's App. (dkt. #2-1) ECF 249).

Peter, who had made false representations on the seller's certificates that all

subcontractors had been paid, had shown at least a willful disregard for his fiduciary duty and

had probably committed outright fraud. *Id.* As for Phillip, I found he "was aware that the sales

were being made and that they could only be done by the fraud carried out by his brother and the

violation of the trust by Kegonsa Builders." *Id.* (citing Appellant's App. (dkt. #2-1) at ECF 250).

On appeal, the district court affirmed the ruling as to Peter. *Peter Sveum v. Stoughton

Lumber Co. Inc.*, 2014 WL 4748555, *7 (W.D. Wis. Sept. 23, 2014). However, it identified two

issues with the ruling concerning Phillip: (1) an inadequate explanation as to the evidence the

3

bankruptcy court relied on in explicitly finding Phillip's *knowing* misappropriations; and (2) no clear finding of willful blindness, if such a finding was made at all. *Phillip Sveum,* 2014 WL 4748538 at *8. Consequently, Judge Conley remanded the case to (1) point to the evidence on which I relied in finding knowing misconduct, and (2) make more express findings as to whether Phillip's actions or inactions constitute willful blindness. *Id.*

11 U.S.C. § 523(a)(4) excepts from discharge "any debt…for fraud or defalcation while acting in a fiduciary capacity." A finding of non-dischargeability under § 523(a)(4) requires a plaintiff to establish, in an adversary proceeding, that: (1) a trust existed; (2) the debtor was a fiduciary of the trust; and (3) the debtor committed fraud or defalcation while acting as fiduciary. *In re Polus*, 455 B.R. 705, 708 (Bankr. W.D. Wis. 2011). The existence of a trust and the fact Phillip was a fiduciary is not in dispute. I will focus on the basis for concluding Phillip committed fraud or defalcation while acting in that capacity.

To evaluate defalcation under the theft by contractor statute[1], "most courts look to the defendant's knowledge of the statute, the circumstances surrounding the violation, and the

---

[1] THEFT BY CONTRACTORS. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation. Any of such misappropriated moneys which have been received as salary, dividend, loan repayment, capital distribution or otherwise by any shareholder, member, or partner not responsible for the misappropriation shall be a civil liability of that person and may be recovered and restored to the trust fund specified in this subsection by action brought by any interested party for that purpose. Except as provided in this subsection, this section does not create a civil cause of action against any person other than the prime contractor or subcontractor to whom such moneys are paid. Until all claims are paid in full, have matured by notice and filing or have expired, such proceeds and moneys shall not be subject to garnishment, execution, levy or attachment. Wis. Stat. § 779.02(5).

degree to which the defendant acted in his own self-interest, as relevant evidence from which

inferences of culpability can be drawn." *Polus*, 455 B.R. at 708. In *Bullock v. BankChampaign,*

*N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court held that defalcation "requires an intentional

wrong" and further explained:

> We include as intentional not only conduct that the fiduciary
> knows is improper but also reckless conduct of the kind that the
> criminal law often treats as the equivalent. Thus, we include
> reckless conduct of the kind set forth in the Model Penal Code.
> Where actual knowledge of wrongdoing is lacking, we consider
> conduct as equivalent if the fiduciary 'consciously disregards' (or
> is willfully blind to) 'a substantial and unjustifiable risk' that his
> conduct will turn out to violate a fiduciary duty. That risk 'must be
> of such a nature and degree that, considering the nature and
> purpose of the actor's conduct and the circumstances known to
> him, its disregard involves *a gross deviation* from the standard of
> conduct that a law-abiding person would observe in the actor's
> situation.'

*Id.* at 1759-60. *Bullock* suggests the heightened defalcation standard requires an awareness of the

fiduciary duty, or at least willful blindness as to the duty, as opposed to just knowledge or willful

blindness about how the funds were being spent (on expenses other than paying subcontractors).

It was my intention in the initial ruling to articulate my conviction, after hearing the evidence

and observing the demeanor of the witnesses, that Phillip's conduct demonstrated actual

knowledge of wrongdoing or a conscious disregard for a substantial and unjustifiable risk that his

conduct would violate a fiduciary duty.

On the facts admitted and proved in this case, it is extremely unlikely Phillip did not have

actual knowledge of KBI's wrongdoing. He admitted making the decision not to pay Stoughton

out of the funds transferred from his other businesses into KBI, yet claims he had no knowledge

of Peter's decision to direct funds KBI received in payment of draw requests to entities other

than the subcontractors and suppliers. Phillip's participation in the decision not to pay Stoughton

demonstrates his knowledge KBI had more debts to subcontractors than money with which to pay them. Consequently, every time he received a commission from the sale of a home, Phillip was presumably alerted to the possibility and, in this case, the fact that all the subcontractors were not receiving full payment. To the extent he, or any of the businesses from which he received payment or profit, benefitted from a diversion of KBI receipts, he was aware of the defalcation.

Even if Phillip was not actively cognizant of wrongdoing, it is clear he consciously disregarded the substantial and unjustifiable risk that his conduct was violating his fiduciary duty. Several facts support this conclusion. First, he received monthly financial statements which would have alerted him to the non-payment of subcontractors and the possibility of a violation of his fiduciary duty. Second, he had access to KBI's account but simply trusted his brother to properly segregate the money. Third, the accountant reported to Phillip and Peter about every business they owned except KBI and it was clear the financial health of all of the businesses were tied together. The fact he claims he never thought to inquire into KBI's business practices, despite all the information available to him, demonstrates at least willful blindness to the substantial and unjustifiable risk he was violating his fiduciary duty.

Despite his disingenuous claims of ignorance, Phillip's behavior was a gross deviation from the standard of conduct a law-abiding citizen would have observed and falls within the range of defalcation under 11 U.S.C. § 523(a)(4).

Dated:  November 3, 2014

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE